**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**TACOMA DIVISION**

| | |
|---|---|
| JAMES STOTT and LISI UMI, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>MCLANE COMPANY, INC.; and DOES 1-20, inclusive,<br><br>Defendants. | Case No. 3:26-cv-05822<br><br>**DEFENDANT MCLANE COMPANY, INC.'S NOTICE OF REMOVAL OF CIVIL ACTION** |

Pursuant to 28 U.S.C. § 1332(d) (the Class Action Fairness Act or "CAFA"), 28 U.S.C. § 1441 *et. seq.*, and 28 U.S.C. § 1446 *et. seq.,* Defendant McLane Company, Inc. removes the above-captioned action from the Superior Court of Washington for Pierce County to this Court on the ground of original jurisdiction based on CAFA and all other applicable grounds for removal jurisdiction. The following statement is submitted in accordance with 28 U.S.C. § 1446:

## I. STATEMENT OF JURISDICTION

1. CAFA grants federal district courts original jurisdiction over civil class action lawsuits filed under federal or state law in which any member of a putative class of plaintiffs is a citizen of a state different from any defendant, and where the matter in controversy exceeds $5,000,000, exclusive of interest and costs. 28 U.S.C. § 1332(d).

2. There is no presumption against removal under CAFA. *Dart Cherokee Basin*


BAKER & HOSTETLER LLP
999 Third Avenue, Suite 3900
Seattle, WA 98104-4040
Telephone: (206) 332-1114

*Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014) ("*Dart Cherokee*") ("no antiremoval presumption attends cases invoking CAFA, which Congress enacted to facilitate adjudication of certain class actions in federal court"). To the contrary, "CAFA's 'provisions should be read broadly, with a strong preference that interstate class actions should be heard in federal court if properly removed by any defendant.'" *Id.* at 89, *quoting* S. Rep. No. 109-14, p. 43 (2005).

3. Removal to this Court is proper because the action was filed and is pending in the Superior Court of Washington for Pierce County, which is within this judicial district. 28 U.S.C. §§ 128(b) and § 1446(a).

4. As set forth below, this Court has jurisdiction over this case under CAFA, and this case may be removed to this Court pursuant to 28 U.S.C. § 1441(a), because: (1) the proposed class contains more than 100 members; (2) Defendant is not a state, state official, or other governmental entity; (3) the total amount in controversy ("**AIC**") for all class members exceeds $5,000,000; (4) there is diversity between at least one class member and Defendant; and (5) this case is being timely and properly removed by the filing of this Notice.

## II. STATUS OF PLEADINGS

5. On or about May 6, 2026, Plaintiffs James Stott and Lisi Umi (collectively, "**Plaintiffs**") filed a putative Class Action Complaint for Damages in the Superior Court of Washington for Pierce County (the "**State Court**") against Defendant, entitled *James Stott and Lisi Umi, individually and on behalf of all others similarly situated v. McLane Company, Inc.; and Does 1-20, inclusive,* Case Number 26-2-08402-1 (the "**State Court Action**"), a true and correct copy of which is attached hereto as Exhibit A.

6. On or about May 12, 2026, Defendant's registered agent for service of process was personally served with copies of the Summons and Complaint. The only other process, pleading and order served on Defendant on or around May 12, 2026 are the Summons, Order Assigning Case to Judicial Department and Setting Review Hearing Date, and Demand for Jury, which are attached hereto as Exhibits B, C, and D, respectively.


BAKER & HOSTETLER LLP
999 Third Avenue, Suite 3900
Seattle, WA 98104-4040
Telephone: (206) 332-1114

7. Defendant is informed and believes that the only additional documents that are on file in the State Court Action are the Case Information Cover Sheet, Declaration of Service, Note for Motion Docket, May 26, 2026 Stipulation Extending Deadline for Defendant to Respond to Complaint, Notice of Appearance (Nikki Trenner), June 2, 2026 Stipulation Extending Deadline for Defendant to Respond to Complaint, June 2, 2026 Memorandum of Journal Entry, June 2, 2026 Order Granting Stipulation Extending Deadline for Defendant to Respond to Complaint, June 26, 2026 Memorandum of Journal Entry, and Notice of Appearance (James B. Pizl, Daniel J. Teimouri), which are attached hereto as Exhibits E, F, G, H, I, J, K, L, M, and N, respectively.

8. Defendant is further informed and believes that there has been no service of process upon Defendants DOES 1 through 20, which are fictitious defendants to be disregarded for the purposes of this removal. *See* 28 U.S.C. § 1441(a).

9. Plaintiffs' Complaint asserts that they and the putative class they seek to represent are current or former non-exempt, hourly-paid employees of Defendant who work, or worked, at any location in the State of Washington. *See* Exh. A (Complaint), ¶ 4.1.

10. Plaintiffs' Complaint asserts four causes of action: (1) failure to compensate for noncompliant meal and rest periods; (2) failure to pay minimum wages in violation of the Washington Minimum Wage Act (WMWA) RCW 49.46 *et seq.*; (3) failure to pay overtime wages; and (4) failure to provide all owed paid sick leave in violation of RCW 49.46.210.

## III. CAFA JURISDICTION IS SATISFIED

### A. This Action Is A Class Action Under CAFA

11. Pursuant to Section 4 of CAFA, 28 U.S.C. § 1332(d)(2):

> The district courts shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which —
>
> (A) any member of a class of plaintiffs is a citizen of a State different from any defendant.

12. CAFA defines a "class action" to include civil actions filed under State statutes or

rules of procedure similar to Fed. R. Civ. P. 23 which authorize an action to be brought by one or more representative persons as a class action. The Complaint is titled "Class Action Complaint for Damages" and alleges that it is brought pursuant to Washington Civil Rule 23 on behalf of a purported class. *See* Exh. A (Complaint), ¶ 4.1. Therefore, this action is a "class action" under CAFA.

**B. Minimum Diversity Exists**

13. Minimum diversity exists pursuant to 28 U.S.C. § 1332(d)(2)(A). Plaintiffs allege that, "at all relevant times," they were "individuals domiciled in the State of Washington and citizens of the State of Washington." Exh. A (Complaint), ¶ 3.1 Further, Defendant is informed and believes that Plaintiffs are residing and intend to indefinitely remain living continuously in Washington, and that their domicile presently is in Washington. Additionally, the putative class is defined to only include "non-exempt, hourly-paid employees who worked for any one or more of the Defendants at any location in Washington State." *See* Exh. A (Complaint), ¶ 4.1. Accordingly, Plaintiffs are citizens of Washington for purposes of CAFA. *See* 28 U.S.C. § 1332(a)(1) (an individual is a citizen of the state in which he or she is domiciled).[1]

14. Defendant is a corporation and is therefore deemed to be a citizen of the state in which it has been incorporated and the state where it has its principal place of business. 28 U.S.C. § 1332(c)(1). A corporation's principal place of business is generally where its headquarters is located.[2] As reflected on the State of Washington Secretary of State's Corporations search website, Defendant is a Texas corporation with its corporate headquarters and principal place of business in Temple, Texas, where its executives are located. *See* URL at

---

[1] *See also Lew v. Moss*, 797 F.2d 747, 751-52 (9th Cir. 1986) (party domiciled in state of party's address and driver's license); *State Farm Mut. Auto. Ins. Co. v. Dyer,* 19 F.3d 514, 520 (10th Cir. 1994) (residence is *prima facie* evidence of domicile for purposes of determining citizenship).

[2] *See Hertz Corp. v. Friend,* 130 S.Ct. 1181, 1192 (2010) (the "'principal place of business' is best read as referring to the place where a corporation's officers direct, control, and coordinate the corporation's activities," and in practice, the principal place of business "should normally be the place where the corporation maintains its headquarters - provided that the headquarters is the actual center of direction, control, and coordination."); *Tosco Corp. v. Communities for a Better Env't*, 236 F.3d 495, 499 (9th Cir. 2001).


BAKER & HOSTETLER LLP
999 Third Avenue, Suite 3900
Seattle, WA 98104-4040
Telephone: (206) 332-1114

https://www.sos.wa.gov/corps/search_detail.aspx?ubi=600353022 (Corporation Name Searched: "McLane Company, Inc."). At its corporate headquarters, Defendant's officers direct, control and coordinate its activities and the majority of its executive and administrative functions are performed there. Thus, Defendant was not and is not a citizen of the State of Washington but, rather, was and is a citizen of the State of Texas for the purpose of determining jurisdiction. *See* 28 U.S.C. § 1332(c)(1); *Hertz*, 130 S.Ct. at 1192; *Tosco*, 236 F.3d at 499.

15. Consequently, Defendant's citizenship is diverse from Plaintiffs' citizenship, and the minimum diversity requirement under CAFA is satisfied.

**C. The Amount in Controversy Exceeds $5,000,000**

16. Based on the following calculations, Defendant avers that the AIC exceeds $5,000,000 only for the purposes of establishing subject matter jurisdiction under CAFA. Defendant's allegations and calculations are not admissions of liability or damages with respect to any aspect of this case, or to the proper legal test(s) applicable to Plaintiffs' allegations, or whether a class action is proper.[3]

17. A removing Defendant's notice of removal need only contain plausible allegations, consistent with Fed. R. Civ. P. 8(a), to demonstrate the AIC. Evidentiary submissions are not required unless and until the removing Defendant's allegations are contested by the plaintiff or questioned by the court:

> In sum, as specified in 1446(a), a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold. Evidence establishing the amount is required by 1446(c)(2)(B) only when the plaintiff contests, or the court questions, the defendant's allegation.

*Dart Cherokee*, 574 U.S. at 89.

---

[3] *See LaCrosse v. Knight Truck and Trailer Sales, LLC*, 775 F.3d 1200, 1203 (9th Cir. 2015), *quoting Ibarra v. Manheim Investments, Inc.*, 775 F.3d 1193, 1198 n. 1 (9th Cir. 2015) ("'Even when defendants have persuaded a court upon a CAFA removal that the amount in controversy exceeds $5 million, they are still free to challenge the actual amount of damages in subsequent proceedings and trial'").


BAKER & HOSTETLER LLP
999 Third Avenue, Suite 3900
Seattle, WA 98104-4040
Telephone: (206) 332-1114

18. This standard applies to complaints like the Complaint here, which do not allege or seek a specific amount of damages:

> When plaintiffs favor state court and have prepared a complaint that does not assert the amount in controversy … the Supreme Court has said that a defendant can establish the amount in controversy by an unchallenged, plausible assertion of the amount in controversy in its notice of removal.

*Ibarra v. Manheim Investments, Inc.*, 775 F.3d 1193, 1197-98 (9th Cir. 2015), *citing Dart Cherokee*, 574 U.S. at 89.

19. The plaintiff's complaint is a court's "first source of reference in determining the amount in controversy." *LaCrosse*, 775 F.3d at 1202, *citing St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289 (1938). The ultimate inquiry is what amount is put "in controversy" by Plaintiffs' Complaint, not what a court or jury might later determine to be the actual amount of damages, if any.[4]

20. Plaintiffs bring this action on behalf of themselves and a putative class defined as:

> All current and former non-exempt, hourly-paid employees who worked for any one or more of the Defendants at any location in Washington State at any time from three years prior to the filing of the Complaint through the date of the Court's order certifying the class ("Class Period"), excluding any commercial truck driver employees subject to Federal Motor Carrier Safety Administration (FMCSA) regulations.

Exh. A (Complaint), ¶ 4.1.

21. CAFA authorizes the removal of class actions in which, among the other factors mentioned above, the aggregate AIC for all class members exceeds five million dollars

[4] *See Ibarra*, 775 F.3d at 1198 n. 1, *citing Sparta Surgical Corp. v. Nat'l Ass'n of Sec. Dealers, Inc.*, 159 F.3d 1209, 1213 (9th Cir. 1998) (defendants "are not stipulating to damages suffered" in a removal petition, "but only estimating the damages that are in controversy," because "jurisdiction must be analyzed on the basis of pleadings filed at the time of removal"); *St. Paul Mercury*, 303 U.S. at 291 ("the status of the case as disclosed by the complaint is controlling in the case of a removal"); *Scherer v. Equitable Life Assurance Soc'y of the United States,* 347 F.3d 394, 399 (2d Cir. 2003) (the "'amount in controversy' … for jurisdictional purposes, [is] the sum put in controversy by the plaintiff's complaint"); *Wilder v. Bank of Am., N.A.*, 2014 WL 6896116, *4 (C.D. Cal. Dec. 5, 2014) (citing cases holding that in measuring the amount in controversy, the court assumes that a jury will return a verdict on all claims asserted in the complaint, and that the ultimate inquiry is what the complaint alleges, not what the defendant might actually owe).


BAKER & HOSTETLER LLP
999 Third Avenue, Suite 3900
Seattle, WA 98104-4040
Telephone: (206) 332-1114

($5,000,000). *See* 28 U.S.C. § 1332(d). Here, the claimed damages and penalties in the Complaint exceed that jurisdictional minimum.

22. The statute of limitations on the claims asserted in the Complaint is three years. *See* RCW 4.16.080(2)-(3); *Prof'l Eng'g Ass'n v. Boeing Co.,* 139 Wash. 2d 824, 837-838 (2000) (three-year statute of limitations applies to wage claims). Given that the Complaint was filed on May 6, 2026, the putative class period begins on May 6, 2023.

## SIZE OF THE PROPOSED CLASS

23. According to the Complaint, "[t]here are at least one hundred current and former hourly-paid employees of Defendants in the Class" and the "members of the Class are so numerous that joinder of all members is impractical." Exh. A (Complaint), ¶ 4.3. Indeed, there are more than 100 individuals who are putative class members ("**PCMs**") during the putative class period as defined in the Complaint. *Id.*, ¶ 4.1. Therefore, the aggregate membership of the proposed class is *at least* 100 as required under CAFA. *See* 28 U.S.C. § 1332(d)(5)(B).

## CAFA AMOUNT IN CONTROVERSY

24. The claims of the individual PCMs in a "class action" are aggregated to determine if the AIC exceeds the sum or value of $5 million. *See* 28 U.S.C. §§ 1332(d)(6), (11). In addition, Congress intended for federal jurisdiction to be appropriate under CAFA "if the value of the matter in litigation exceeds $5,000,000 either from the viewpoint of the plaintiff or the viewpoint of the defendant, and regardless of the type of relief sought (*e.g.*, damages, injunctive relief, or declaratory relief)." Senate Judiciary Committee Report, S. Rep. 109-14, at 42. Moreover, the Senate Judiciary Committee's Report on the final version of CAFA makes clear that any doubts regarding the maintenance of interstate class actions in state or federal court should be resolved in favor of federal jurisdiction.[5]

[5] *See* S. Rep. 109-14, at 42-43 ("[I]f a federal court is uncertain about whether 'all matters in controversy' in a purported class action 'do not in the aggregate exceed the sum or value of $5,000,000, the court should err in favor of exercising jurisdiction over the case . . . Overall, new section 1332(d) is intended to expand substantially federal court jurisdiction over class actions. Its



BAKER & HOSTETLER LLP
999 Third Avenue, Suite 3900
Seattle, WA 98104-4040
Telephone: (206) 332-1114

25. Defendant's employment data for its Washington-based non-exempt, hourly-paid employees (excluding truck drivers) from May 6, 2023 through July 18, 2026 (the "**3-Year SOL Period**") was used to determine the CAFA AIC for purposes of this Notice of Removal.

## FIRST CAUSE OF ACTION: FAILURE TO COMPENSATE FOR NONCOMPLIANT MEAL AND REST PERIODS

26. Plaintiffs' **First Cause of Action** seeks unpaid wages based on Defendant's alleged failure to pay wages for meal and rest breaks, alleging that Plaintiff and PCMs were not compensated for "each missed or otherwise legally noncompliant meal and rest period." Exh. A (Complaint), ¶ 6.9. Plaintiffs allege that their "claims are ***typical*** of the claims of the [PCMs] because … Plaintiffs' claims stem from the same practice or course of conduct that form the basis of the Class claims; … the Class claims are based on the same facts and legal theories; … [and] [t]he injuries that Plaintiffs suffered are similar to the injuries that other [PCMs] suffered and continue to suffer." *Id.*, ¶ 4.4 (emph. added). In terms of such typicality, Stott alleges that he was "compensated with a base hourly rate of approximately $23.75 per hour" without specificity as to time period. *Id.*, ¶ 5.5.

27. Plaintiffs' meal period violations claim is predicated on *three* (3) distinct types of violations:

### A. Missed or Late Meal Periods

28. Plaintiffs allege that PCMs were "sometimes forced to take a meal period after working more than five (5) hours." *Id.*, ¶ 5.9. Specifically, "during peak busy seasons – including from approximately October through January and around Valentine's Day and Easter," they allegedly "experienced approximately ***three (3) or four (4) late or missed meal periods on a weekly basis***." *Id.* (emph. added).

provisions should be read broadly, with a strong preference that interstate class actions should be heard in a federal court if properly removed by any defendant.").



BAKER & HOSTETLER LLP
999 Third Avenue, Suite 3900
Seattle, WA 98104-4040
Telephone: (206) 332-1114

29. During the 3-Year SOL Period, PCMs worked an aggregate of (1) 15,173 workweeks during the months of October through April (the "**Peak Busy Season**") with recorded time worked of 39 or more hours in each such workweek, which are reasonably assumed to require additional meal period wages to be paid at an overtime rate of pay, and (2) 11,216 workweeks during the Peak Busy Season with recorded time worked of less than 39 hours in each such workweek, which are reasonably assumed to require additional meal period wages to be paid at a regular rate of pay. Conservatively assuming an average of 3.5 violations per workweek based on Plaintiffs' allegations, including as to Stott's alleged typical hourly rate, Defendant calculates the total AIC on Plaintiffs' putative class claims for missed or late meal periods during the Peak Busy Season to be at least **$1,412,106.72**, calculated as the sum of the following, plus such additional amounts through the ultimate adjudication of this action:

| **Rate of Pay** | | **Meal Period Hours Per Day** | | **Total Number of Workweeks** | | **Violations Per Week** | | **Amount In Controversy** |
|---|---|---|---|---|---|---|---|---|
| $23.75 | x | 0.50 | x | 11,216 | x | 3.5 | = | **$466,165.00** |
| $35.625 (1.5 OT Rate) | x | 0.50 | x | 15,173 | x | 3.5 | = | **$945,941.72** |

30. During the 3-Year SOL Period, PCMs worked an aggregate of (1) 14,183 workweeks during the months of May to September (the "**Non-Peak Season**") with recorded time worked of 39 or more hours in each such workweek, which are reasonably assumed to require additional meal period wages to be paid at an overtime rate of pay, and (2) 7,662 workweeks during the Non-Peak Season with recorded time worked of less than 39 hours in each such workweek, which are reasonably assumed to require additional meal period wages to be paid at a regular rate of pay. Conservatively assuming an average of 1.5 violations per workweek based on Plaintiffs' allegations, including as to Stott's alleged typical base hourly rate, Defendant calculates the total

AIC on Plaintiffs' putative class claims for missed or late meal periods during the Non-Peak Season to be at least **$515,431.41**, calculated as the sum of the following, plus such additional amounts through the ultimate adjudication of this action:

| Rate of Pay | | Meal Period Hours Per Day | | Total Number of Workweeks | | Violations Per Week | | Amount In Controversy |
|---|---|---|---|---|---|---|---|---|
| $23.75 | x | 0.50 | x | 7,662 | x | 1.5 | = | **$136,479.38** |
| $35.625 (1.5 OT Rate) | x | 0.50 | x | 14,183 | x | 1.5 | = | **$378,952.03** |

**B. Short or Interrupted Meal Periods**

31. Plaintiffs allege that PCMs were required to take "shortened meal periods [and] interrupted meal periods" at a "rate of once or twice per week." *Id.*, ¶ 5.11. Plaintiffs make no distinction between the Peak Busy and Non-Peak Seasons for this alleged violation rate.

32. During the 3-Year SOL Period, PCMs worked an aggregate of (1) 29,356 workweeks with recorded time worked of 39 or more hours in each such workweek, which are reasonably assumed to require additional meal period wages to be paid at an overtime rate of pay, and (2) 18,878 workweeks with recorded time worked of less than 39 hours in each such workweek, which are reasonably assumed to require additional meal period wages to be paid at a regular rate of pay. Conservatively assuming 1.5 violations per week based on Plaintiffs' allegations and utilizing Stott's alleged base hourly rate, Defendant calculates the total AIC on Plaintiffs' putative class claims for short or interrupted meal periods to be at least **$1,120,620.01**, calculated as the sum of the following, plus such additional amounts through the ultimate adjudication of this action:

| Rate of Pay | | Meal Period Hours Per Day | | Total Number of Workweeks | | Violations Per Week | | Amount In Controversy |
|---|---|---|---|---|---|---|---|---|
| $23.75 | x | 0.50 | x | 18,878 | x | 1.5 | = | **$336,264.38** |
| $35.625 (1.5 OT Rate) | x | 0.50 | x | 29,356 | x | 1.5 | = | **$784,355.63** |

### C. Failure to Provide Second Meal Periods

33. Plaintiffs also allege that, when they "worked three (3) or more hours beyond [their] normal workday, Plaintiffs did not always receive a second meal period." *Id.*, ¶ 5.12. Specifically, Plaintiffs allege PCMs worked "shifts of approximately eleven (11) hours or longer – during which [Defendant] failed to provide [PCMs] with a required second meal period, in violation of Washington law." *Id.*, ¶ 5.13. Plaintiffs make no distinction between the Peak Busy and Non-Peak Seasons for this violation rate.

34. During the 3-Year SOL Period, PCMs worked an aggregate of 21,000 shifts with recorded time worked of 11 or more hours. Conservatively assuming that all such shifts trigger overtime wages for any additional wages alleged owed, multiplying the number of those shifts, and utilizing Stott's alleged typical base hourly rate, Defendant calculates the total AIC on Plaintiffs' putative class claims for the failure to provide second meal breaks to be at least **$374,062.50**, calculated as the sum of the following, plus such additional amounts through the ultimate adjudication of this action:

| OT Rate of Pay | | Meal Period Hours Per Day | | Shifts with 11 Hours or More | | Amount In Controversy |
|---|---|---|---|---|---|---|
| $35.625 | x | 0.50 | x | 21,000 | = | **$374,062.50** |

35. Plaintiffs' rest period claim is also predicated on *two* (2) distinct types of violations:

**A. Non-Compliant Rest Periods**

36. Plaintiffs allege that PCMs were "denied required rest periods because they were required to work through part or all of their rest periods, take late rest periods or take rest periods that were shorter than ten minutes long." *Id.*, ¶ 5.17. Plaintiffs further allege that PCMs were "not provided with an off-duty rest period of at least ten (10) minutes for every four (4) hours worked at rate of approximately two to three times per week during busy seasons." *Id.* Defendant reasonably assumes that, during the Non-Peak Season," PCMs were "denied one … compliant rest period[]" per workweek. *See e.g. id.*, ¶ 5.18.

37. During the 3-Year SOL Period, PCMs worked an aggregate of 26,303 workweeks during the Peak Busy Season with recorded time worked of 4 hours or more, with 57% of those workweeks having recorded time worked of 39 or more hours in each such workweek, which are reasonably assumed to require additional meal period wages to be paid at an overtime rate of pay, and 43% of those workweeks having recorded time worked of less than 39 hours in each such workweek, which are reasonably assumed to require additional meal period wages to be paid at a regular rate of pay. Conservatively assuming an average of 2.5 violations per week based on Plaintiffs' allegations, including as to Stott's alleged typical hourly rate, Defendant calculates the total AIC on Plaintiffs' putative class claims for non-compliant rest periods during the Peak Busy Season to be at least **<u>$341,163.70</u>**, calculated as the sum of the following, plus such additional amounts through the ultimate adjudication of this action:

| Rate of Pay | | Rest Period Hours Per Day | | Total Number of Workweeks (Based on Percentage Distribution) | | Violations Per Week | | Amount In Controversy |
|---|---|---|---|---|---|---|---|---|
| $23.75 | x | 0.17 | x | 11,310 | x | 2.5 | = | **$114,160.31** |
| $35.625 (1.5 OT Rate) | x | 0.17 | x | 14,993 | x | 2.5 | = | **$227,003.39** |

38. During the 3-Year SOL Period, PCMs worked an aggregate of 21,742 workweeks during the Non-Peak Season having recorded time worked of 4 hours or more, with 65% of those workweeks with recorded time worked of 39 or more hours in each such workweek, which are reasonably assumed to require additional meal period wages to be paid at an overtime rate of pay, and 35% of those workweeks having recorded time worked of less than 39 hours in each such workweek, which are reasonably assumed to require additional meal period wages to be paid at a regular rate of pay. Conservatively assuming 1 violation per week based on Plaintiffs' allegations, including as to Stott's alleged typical hourly rate, Defendant calculates the total AIC on Plaintiffs' putative class claims for non-compliant rest periods during the Non-Peak Season to be at least **$116,312.31**, calculated as the sum of the following, plus such additional amounts through the ultimate adjudication of this action:

| **Rate of Pay** | | **Rest Period Hours Per Day** | | **Total Number of Workweeks (Based on Percentage Distribution)** | | **Violations Per Week** | | **Amount In Controversy** |
|---|---|---|---|---|---|---|---|---|
| $23.75 | x | 0.17 | x | 7,610 | x | 1 | = | **$30,725.38** |
| $35.625 (1.5 OT Rate) | x | 0.17 | x | 14,132 | x | 1 | = | **$85,586.93** |

**B. Failure to Provide Third Rest Periods**

39. Plaintiffs further allege that, as a result of Defendant's "***pattern and practice*** of failing to provide third rest breaks on extended shifts," Defendant failed to provide PCMs with a "required third rest break on extended shifts, including but not limited to, shifts exceeding twelve hours." *Id.*, ¶ 5.19 (emph. added). Plaintiffs allege that when they and other PCMs "worked these extended shifts, [Defendant's] management made no provision for third rest breaks and instead encouraged Plaintiff and other [PCMs] to conclude their shifts as quickly as possible without regard to rest break requirements." *Id.*

40. During the 3-Year SOL Period, PCMs worked an aggregate of 10,474 shifts with recorded time worked of 12 or more hours. Conservatively assuming that all such workweeks trigger overtime wages for any additional wages allegedly owed, multiplying the number of those shifts, and utilizing Stott's alleged typical base hourly rate, Defendant calculates the total AIC on Plaintiffs' putative class claims for the failure to provide third rest breaks to be at least **$63,433.16**, calculated as the sum of the following, plus such additional amounts through the ultimate adjudication of this action:

| OT Rate of Pay | | Rest Period Hours Per Day | | Shifts with 12 Hours or More | | Amount In Controversy |
|---|---|---|---|---|---|---|
| $35.625 | x | 0.17 | x | 10,474 | = | **$63,433.16** |

41. Plaintiffs also allege that, *inter alia*, Defendant's failure to pay wages for meal and rest periods was *willful* and *intended* to deprive PCMs of wages and, therefore, seek additional "[e]xemplary damages in amounts equal to double the wages due to Plaintiffs and [PCMs] pursuant to RCW 49.52.070." *See* Exh. A (Complaint), ¶¶ 5.24, 6.11, Prayer for Relief, ¶ C.

42. Accordingly, the AIC on Plaintiffs' **First Cause of Action** is at least **$7,886,259.62** [$3,943,129.81 + $3,943,129.81]. *See* recap, *infra*.

**STATUTORY ATTORNEYS' FEES**

43. Plaintiffs also seek statutory attorneys' fees in connection with each and every cause of action alleged in the Complaint. *See* Exh. A (Complaint), ¶¶ 6.11, 7.8, 8.6, 9.3 & Prayer for Relief, ¶ E. In the Ninth Circuit, when attorneys' fees are authorized by statute, they are appropriately part of the calculation of the "amount in controversy" for purposes of removal. *Kroske v. U.S. Bank Corp.*, 432 F.3d 976, 980 (9th Cir. 2005); *Johnson v. America Online, Inc.*, 280 F.Supp.2d 1018 (N.D. Cal. 2003); *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1155-56 (9th Cir. 1998) ("[W]here an underlying statute authorizes an award of attorneys' fees, either with


BAKER & HOSTETLER LLP
999 Third Avenue, Suite 3900
Seattle, WA 98104-4040
Telephone: (206) 332-1114

mandatory or discretionary language, such fees may be included in the amount in controversy.”). Where, as here, a common fund recovery potentially is sought, the Ninth Circuit uses a benchmark rate of 25% of the potential award as an estimate for attorneys’ fees. *See, e.g.*, *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998) (“This circuit has established 25% … as a benchmark award for attorney fees.”); *Glass v. UBS Fin. Servs.*, 331 Fed.Appx. 452, 457 (9th Cir. 2009). Utilizing Defendant’s calculations of the amount in controversy on Plaintiffs’ First Cause of Action ***only*** and the 25% benchmark for attorneys’ fees used in the Ninth Circuit, Defendant calculates the amount in controversy on Plaintiffs’ **statutory attorneys’ fees** claim to be no less than **$1,971,564.91** [$7,886,259.62 x 25%].

44. Based on the foregoing, the amount in controversy on Plaintiffs’ First Cause of Action, inclusive of statutory attorneys’ fees, is at least **$9,857,824.53**, which exceeds the $5,000,000.00 CAFA threshold:

| **Cause of Action / Claim** | **Amount in Controversy** |
|---|---|
| Missed or Late Meal Periods – Peak Busy Season | $1,412,106.72 |
| Missed or Late Meal Periods – Non-Peak Season | $515,431.41 |
| Short or Interrupted Meal Periods | $1,120,620.01 |
| Failure to Provide Second Meal Periods | $374,062.50 |
| Non-Compliant Rest Periods – Peak Busy Season | $341,163.70 |
| Non-Compliant Rest Periods – Non-Peak Season | $116,312.31 |
| Failure to Provide Third Rest Periods | $63,433.16 |
| **SUBTOTAL** | **$3,943,129.81** |
| Double Damages | $3,943,129.81 |
| **SUBTOTAL** | **$7,886,259.62** |
| Statutory Attorneys’ Fees (25%) | $1,971,564.91 |
| **TOTAL AMOUNT IN CONTROVERSY:** | **$9,857,824.53** |


BAKER & HOSTETLER LLP
999 Third Avenue, Suite 3900
Seattle, WA 98104-4040
Telephone: (206) 332-1114

45. Defendant expressly reserves and does not waive its right to amend this Notice of Removal and/or offer evidence and/or further averments supporting the Court's jurisdiction over this action under CAFA or traditional diversity jurisdiction or otherwise, including without limitation as to additional and/or different AIC calculations based on any or all of Plaintiffs' causes of action alleged in the Complaint. Additionally, Defendant assumes that the proposed class is as defined by Plaintiffs in the Complaint for purposes of this Notice of Removal only, but expressly reserves and does not waive its position that the proposed class definition is improper and/or cannot be certified.

46. In addition, nothing in this Notice of Removal is intended to be or should be construed as any type of express or implied admission by Defendant of any fact, of the validity or merits of any of Plaintiffs' claims, causes of action, or allegations, or of any liability for the same, all of which to the are hereby expressly denied, or as any type of express or implied waiver or limitation of Defendant's rights, claims, remedies, and defenses in connection with this action, all of which are hereby fully and expressly reserved, including without limitation as to binding arbitration agreements.

## IV. TIMELINESS OF REMOVAL

47. This Notice of Removal is timely pursuant to 28 U.S.C. § 1446(b) which provides that such Notices "shall be filed within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim upon which such action or proceeding is based." Additionally, the Ninth Circuit has held and clarified that removal is timely under CAFA at any time so long as (1) the face of the complaint does not plainly allege all elements needed for CAFA jurisdiction (including the amount in controversy), and (2) plaintiffs have not served some other "paper" that concedes all elements needed for CAFA jurisdiction. *See Roth v. CHA Hollywood Med. Ctr., L.P.*, 720 F.3d 1121, 1125-26 (9th Cir. 2013) (a removing defendant may remove "on the basis of its own information, provided that it has not run afoul of either of the thirty-day deadlines" set forth in 28 U.S.C. § 1446(b)(1) and (b)(3); "a defendant's

subjective knowledge cannot convert a non-removable action into a removable one such that the thirty-day time limit of § 1446(b)(1) or (b)(3) begins to run against the defendant”).[6]

48. Here, the Complaint does not plainly allege all elements needed for removal under CAFA, and Plaintiffs have not served some other “paper” that concedes all elements needed for such removal. Therefore, this removal is timely pursuant to 28 U.S.C. § 1446(b)(3) and Ninth Circuit precedent.

## V. NOTICE TO PLAINTIFF

49. Contemporaneously with the filing of this Notice of Removal in this Court, written notice of such filing will be served on Plaintiffs’ counsel of record as reflected in the attached Certificate of Service. In addition, a copy of this Notice of Removal will be filed with the Clerk of the Court for the Superior Court of Washington for Pierce County.

WHEREFORE, having provided notice as is required by law, the State Court Action should be removed to this Court.

Dated: July 22, 2026

BAKER & HOSTETLER LLP

*s/ Cornelia Brandfield-Harvey*
Phillip H. Wang, WSBA # 57647
Cornelia Brandfield-Harvey, WSBA # 59746
999 Third Avenue, Suite 3900
Seattle, WA 98104
Tel: (206) 332-1114
pwang@bakerlaw.com
cbrandfieldharvey@bakerlaw.com

[6] *See also Rea v. Michaels Stores Inc.*, 742 F.3d 1234, 1238 (9th Cir. 2014) (reaffirming *Roth*) (“We also recently held in *Roth v. CHA Hollywood Med. Ctr., L.P.*, that the two 30-day periods are not the exclusive periods for removal…. In other words, as long as the complaint or ‘an amended pleading, motion, order or other paper’ does not reveal that the case is removable, the 30-day time period never starts to run and the defendant may remove at any time.”); *Taylor v. Cox Commc’ns California, LLC*, 673 F. App’x 734, 735 (9th Cir. 2016) (“‘A CAFA case may be removed [by a defendant] at any time, provided that neither of the two thirty-day periods under § 1446(b)(1) and (b)(3) has been triggered.’”); *Jackson v. Compass Grp. USA, Inc.*, 2019 WL 3493991, at *3 (C.D. Cal. July 31, 2019) (finding removal based on traditional diversity jurisdiction was timely where the complaint did not indicate on its face that more than $75,000 was in controversy and, thus, the thirty-day removal clock did not start); *Jakuttis v. Allstate Indem. Co.*, 2015 WL 3442083, at *2-4 (C.D. Cal. May 27, 2015) (same).

Matthew C. Kane (*PHV application forthcoming*)
California State Bar No. 171829
Amy E. Beverlin (*PHV application forthcoming*)
California State Bar No. 284745
1900 Avenue of the Stars, Suite 2700
Los Angeles, CA 90067-4508
Tel: (310) 820-8800
mkane@bakerlaw.com
abeverlin@bakerlaw.com

*Attorneys for Defendant McLane Company, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on July 22, 2026, a true and correct copy of the foregoing document was served via CM/ECF and/or e-mailed to counsel below:

James B. Pizl, WSBA #28969
Daniel J. Teimouri, WSBA #47965
Entente Law PLLC
315 39th Avenue Southwest, Suite 13
Puyallup, Washington 98373
(253) 446-7668
bailey@entelaw.com
*Attorneys for Plaintiffs*

*s/ Jaya Field*

Legal Assistant